We will have four cases on the calendar this morning, two patent cases, one from the PTAB and one from the District Court, two cases from the Court of Federal Claims, one of which is being submitted in the briefs and won't be argued in the veterans case. But first, we have one of these pleasant events, family events, one might say, when a member, one of our law clerks, is becoming a member of the bar. And Judge Stoll is going to make a motion. Yes, I have an important motion today. Ms. Bancourt, could you please rise? I am moving for the admission of Bethany Davy Bancourt, who is a member of the bar and is good standing with the highest court of California. I have knowledge of her credentials and am satisfied that she possesses the necessary qualifications. I have had the pleasure to have Bethany serve as my law clerk for the last year and a half. Bethany is not only very talented and diligent and hardworking, but she's also a great joy to work with. She is kind-hearted and lively and has a great sense of humor. I have no doubt that she will be an excellent addition to our bar. Thank you, Judge Stoll. Judge Stoll's motions are usually very well taken and I particularly like the reference to having a good sense of humor. Judge Chen, how do we vote? I vote to grant. I'm going to grant the motion. Would you please step up and take the oath? I take the oath. Do solemnly swear that you will report yourself as an attorney and counselor of this court, uprightly and according to law, and equal to the support of the Constitution of the United States of America. I do. Congratulations. Welcome aboard. Thank you. We will now proceed with our usual business. First case is Nike v. Adidas with a small a. 2019-12-62. Mr. Harris. Thank you, Your Honor. Good morning and may it please the court. The board committed three errors that warrant reversal. First, the board violated the APA's requirements of notice and opportunity to respond when it found Claim 49 unpatentable on an argument that Adidas never raised and the parties never litigated. Instead, it based that finding on an argument that the board itself raised, addressed, and decided for the very first time in its decision on remand. Claim 49 requires, among other things, apertures formed by omitting stitches. What didn't you have adequate notice of and opportunity to respond to? Yeah, sure, Your Honor. The board based its unpatentability determination on the finding that omitting stitches to form apertures was a well-known technique in the art. And in the IPR proceeding below, Adidas did not argue that omitting stitches to form apertures was a well-known technique in the art. Instead, Adidas argued that the Nishida reference disclosed that limitation in Claim 49. That's at Appendix 1002. And in essence, and by the way, the board rejected that argument that was litigated by Adidas in its final written decision on remand. The board found that Nishida does not disclose apertures formed by omitting stitches as claimed in 49, but the board didn't stop there like it should have. Instead, the board went on, and we submit this is where the board erred. The board went on and found that Claim 49 was nonetheless obvious because omitting stitches to form apertures was allegedly well-known in the art. Didn't the board rely on Spencer for that teaching? And Spencer was a prior reference that had been attached to the petition or maybe attached to the experts of report that was attached to the petition? That's correct, Judge Stoll. The board did rely on Spencer to support its conclusion that— So is your argument that there was no notice that the board would be relying on Spencer, or is your argument that you had no notice that the board was going to rely on the assertion that the omission of stitches is well-known? The latter. Spencer was obviously part of the record below, but Adidas never argued, and the parties never litigated whether— What about the fact that this court's opinion on remand said it may well be that the omission of stitches might be well-known? Yeah, that's absolutely right. The court in the prior appeal did say— What did we mean by that? So our interpretation is that this court said, we don't know why the board found Claim 49 unpatentable, because the board didn't articulate its reasoning. So we're going to send this back to the board so that it can articulate its reasoning. And you speculated that maybe the reason was that it thought omitting stitches to form apertures was a well-known technique in the art. Is it? No, it's not, and there's no record evidence that it's a well-known technique in the art. What about Spencer? There's Spencer. Right, so Spencer does not say that omitting stitches to form apertures is a well-known technique in the art. And moreover, there's absolutely— What if Spencer hypothetically taught, just assume for a minute, that it actually taught omitting stitches? Is it your position that just because Spencer teaches the element doesn't teach that it's well-known? I'm just trying to make sure I understand your point. Well, so the first error, our point is that that issue was not raised by Adidas, and it was not litigated. We had no opportunity. And when we went back on remand, the board did not reopen the record for additional evidence and argument. Do you think that the board could rely on references beyond what the petitioner cites, but that your concern is a lack of notice? Yeah, absolutely. The board can rely on references that are part of the record, provided that there's notice and opportunity to be heard. So I understand your argument that you had no idea that the final written decision could potentially rely on Spencer for teaching the creation of apertures by omitting stitches. And so, therefore, you didn't have an opportunity to address that potential finding because you didn't know it was even in the works that the board would unilaterally do that. What if, hypothetically, the board issued a notice 30 days before the oral argument and in the notice said, I see something interesting on page 84 of Spencer that I would like both sides to file five-page briefs on within seven days, discussing whether or not page 84 of Spencer discloses creating apertures in material by omitting stitches, and then be prepared to discuss that oral argument? Do you think that would satisfy all of your APA concerns? Because it's, in fact, the board that first raised the issue, but assuming that Adidas, in its five-page letter brief, said, why, yes, page 84 absolutely does disclose that apertures can be created by omitting stitches. It was known in the art, and because it was known in the art, it was a known technique, and one of the ways to create an aperture is by omitting stitches, just as recited in Claim 49. Would that satisfy all of your concerns? Well, certainly, Your Honor, I think in that scenario, we would have had notice that the board was going to raise it, and we would have had an opportunity to respond. But I think that that scenario would also conflict with what the Supreme Court tells us in SAS, where the Supreme Court said that it's the petitioner's contentions, not the board's discretion. Right, but here we're dealing with a motion to amend, right? You were dealing with proposed substitute claims that, at a minimum, look different than the issued patent claims. And so the petitioner, for those issued patent claims, of course, is serving as the architect of the case by filing a petition and to raising whatever arguments the petitioner wants to make to attack those issued claims. But you, by having filed a motion to amend to thereby alter and modify those claims, now have created something new, and so now we're going off track. And why couldn't the board identify something like this, with then the petitioner, of course, coming forward with the burden of persuasion, having the board identify the issue, then go forward and comment on that? The petitioner has an opportunity. After Nike filed its motion to amend, the petitioner had an opportunity to set forth its contentions on unpatentability, and the burden is on the petitioner to do that. And, in fact, that's what Adidas did here, and Adidas argued that Nishita disclosed the limitation. I think you're drifting away from my question. My question is just a structural one. Is it your view that the board, if it sees something in the record that teaches the limitation that you have added into a proposed substitute claim, does the board have to sit silent about that and do nothing? And then if the petitioner just falls down and doesn't address it, then that's the end of that possible avenue for finding unpatentability? Or can the board identify it early enough in the case so that both sides can address that question in the context of a motion to amend? And if the answer is no, why is the answer no? Well, if the board identifies an issue, notifies the party of the issue, and the context in which it's going to be litigated, I think that that would address the notice and opportunity to respond to arguments that we're raising here in this appeal. You said earlier I asked you if the board was allowed to look at prior or outside what the petitioner had identified in opposing a motion to amend, and you said that the board could. Are you changing your view on that? No, no, absolutely not. I think that the board can consider references that are part of the record as long as the parties are given, the patent owner is given notice and an opportunity to respond to that. Now, I don't see this necessarily as refuting your position here on notice, but I just want to know, did you seek a petition, did you seek a hearing at the board level when you were provided with the final decision that identified the board's grounds for the first time? No, we did not. And we don't think we were required to either. Why didn't you? I mean, even if you're not required to. Well, the record had already been established. We went back on remand, and we knew that the burden was on Adidas to prove that Claim 49 was unpatentable. The board did not reopen the record. We knew that there was no record evidence. I'm presuming, though, that you're saying that you don't think you would have been able to present new evidence, for example, explaining why the prior didn't teach the element of Claim 49. Correct. So, in this legal error that we believe the board committed by not giving us notice and opportunity to respond, we believe led to the board's second error, which is there's no evidence,  that omitting stitches to form apertures is a well-known technique in the art for the 011 patent. And for this issue, we think this Court's Arende v. Apple opinion is instructive. And in that case, the Court cautioned that the general knowledge of a skilled artisan can't be used as a wholesale substitute for detailed analysis and evidentiary support, especially when the board is relying on the general knowledge of a skilled artisan. But wasn't it citing to a prior reference to support that contention of the general knowledge? The board in our case? Yes. Yes, absolutely. The board cited to Spencer for its contention of the general knowledge. But the Arende case says that if the board's going to do that, there needs to be concrete evidence like expert testimony. Why isn't the reference itself alone enough? I mean, Arende did not involve the board citing to a particular prior art reference to support its contention that a particular element was commonly known. It's very different when the board also cites a prior reference, says this is commonly known as evidenced by a prior art reference. Well, and in this case, we submit that the prior reference that the board cited to Spencer does not show that omitting stitches to form apertures is a well-known technique in the art, in the field of the 011 patent. Well-known or not, it's in the prior art. Even if it's not well-known, it's a reference. It's part of the prior art. It talks about open work structure and empty needles. Yes, Your Honor, but it does not talk about omitting stitches or skipping stitches, and there was no record on this developed below. The parties didn't. Doesn't an empty needle lead to skipping a stitch? No, no, not necessarily. That's the point, Your Honor. There was no record developed on this. There was no expert testimony. The portions of Spencer that the board cited to, the parties never addressed or litigated below. So what those portions of Spencer that the board cited to mean, we never had an opportunity to explain that. Moving to your rebuttal time, you can continue or save it. I'll reserve my time for rebuttal. Thank you, Your Honor. Mr. Stoffroth. Good morning. Thank you, Your Honors. I want to just make clear what our position is vis-à-vis this issue. So when you look at the briefing here, one of the points that we've made that Nike has not responded to is that this is a different context. This is a proposed substitute claim. This is not a typical IPR where there's claims beforehand and the petitioner is shooting at issued claims and, as the Supreme Court says in SAS, the petition guides the subsequent litigation. And in Aqua Products, this court said the board has to evaluate proposed substitute claims in light of the entire evidentiary record, and we think that context is very important. The notice cases that Nike generally relies upon are all in the context of a set of issued claims. We also said that the burden of persuasion is assigned to the petitioner when it comes to these motions to amend. That's correct, Your Honor. So necessarily, doesn't that mean that it's up to you to make the case for why the proposed substitute claims are unpatentable? Yes. And then let's assume for the moment you do nothing, right? Correct. Your opposition to the motion to amend is very, very flawed, and nobody could ever conclude that your arguments are persuasive. Are you saying in that context it's okay for the board, on its own, to go fishing around through the entire record and then finding a reference that you did not rely on to create a rejection of the proposed substitute claim and then use that and then explain it in the first instance at the end of the trial in a final written decision to find the proposed substitute claims to be unpatentable? How would that scenario be consistent with you meeting your burden of proof to find the claims unpatentable? So I'm going to break this into two parts. First, what the board can do, and second, the notice issue. And with respect to what the board can do, we do believe that the board has the obligation under ACWA products where both the majority opinion and the dissent agree that it was up to the board to look at the entire record when examining proposed substitute claims. Because separate and apart from the burden that Adidas bore, the board and the patent office as an institution has the obligation to write a written decision about the patentability of the proposed substitute claims, which would never have been examined. And as the court grappled with in OPERA products, there are situations where petitioners don't care that much about the substitute claim or the petitioner is no longer in the case. And the board as an institution has an obligation to review the patentability of the substitute claim. So that's on the board. So that sounds incompatible with the idea that the burden of proof is assigned not to the board but to the petitioner. I guess you're saying there's actually two things going on. Yes, maybe the petitioner has a burden of proof,  to unilaterally do something freeform outside and beyond what the petitioner argues. Well, I think that's a fair statement. And I would also, with respect to the petitioner in this case, I mean, candidly, Your Honor, I disagree with the premise of your conclusion. We did not do nothing. We had provided the Nishida reference. We had provided the Spitzer reference. Let's assume for the moment that the arguments you made are not persuasive. Your reliance solely on Nishida to render Claim 49 unpatentable is no good. And so the only way to get to an affirmance is through what the board did, which was supplement your incomplete arguments with finding a reference that was in the record and fishing something out of that to then complete the analysis for unpatentability. I still don't see how that's compatible with the notion that the burden of persuasion is on you, the petitioner. Well, if you step back and look at the issues here with respect to Claim 49, we had met our burden on every single element being in the prior art except for the omission of stitches. And with respect to how the apertures were formed by omitting stitches, our argument had been that limitation was meaningless as a matter of law and had no patentable weight under this Court's authority that how you achieve an apparatus structure. Are you arguing that on appeal? No. That's right in your brief. No, but I'm pointing out, Your Honor, that we got all the way up to the omission of stitches. This Court, in its remand order, identified the issue of, well, okay, is that part of the skill in the art? And Encore Products instructs the board to go look at the evidence of record that the petitioner assembled and presented. And the board patched that together. And on that record, we met our burden. Do you think I understand? I hear what you're saying. Do you think, though, notice would be an issue there? I think it sounds like you're arguing that they should have had notice. If you take the existence of the prior art reference, Spencer, in the record, combined with our remand decision that talked about, is this something within the knowledge of one of the skill in the art, that somehow they should have had notice, with the instruction in Encore Products, I guess, that the board can look at the entirety of the record. Somehow, maybe you think that provides notice. But what about the scenario, which we asked your opposing counsel about, where the board would identify and say, hey, we're going to rely on Spencer for Claim 49. What do you think of that? Why don't the parties submit briefs? Then you would be able to satisfy your burden of proof, right? Yes, and I think fundamentally what you're raising is, what is the character and quality of notice required in a proposed substitute claim situation when you've got this interplay between the board's obligation and the petitioner's obligation? What kind of notice is required in that situation? Generally, we agree that in the context of an issued claim in an institution, it is the party's responsibility to provide the prior art and citations to portions of the prior art to provide notice. That's what SAS says. That's what the case law says that Nike says. I think the character and quality of notice in the proposed substitute claim situation is different because these are new claims that have never been examined. And as long as the board is relying on the record assembled by the petitioner and the parties, there is ample notice in that situation of the prior art references. What about the fact that you're using an interesting word, which is examined, right? You're right. Those claims have not yet been examined by the PTO, and the PTO has an examining function. But even in its examining function, the PTO usually provides a first office action, and then there's an opportunity to respond by the patent applicant, or in this case here, the patent owner. Why shouldn't there be an opportunity to respond to the board's position when it relies on prior art not identified by the petitioner in its opposition position? Generally, I agree that there should be sufficient notice for a party to respond. The question in the cases is, and it's very fact-bound, is what is sufficient notice? For example, at some level, what Nike is arguing is, well, we weren't aware that the board was going to end up relying on these three or four pages of Spencer, which is a very long reference. Well, your Genzyme decision talks about how the board can rely upon the same body of prior art that's in the rejection, and there's no need for the board to have... Genzyme is different, though. It is different. Genzyme, just so we're both clear, those particular passages that were relied upon, ultimately in the final decision, were discussed and debated throughout the IPR proceeding. Everybody knew that those pages were in play. In this particular instance, I think it's fair to say, Nike had no idea that these two pages from Spencer were going to be fished out of this 400-page textbook, and then they were going to be surprised with it in the final written decision. And so that's why it troubles me that that can be allowed, that there's no warning. I mean, the functional consequence of what the board did here and what you're proposing is that a patent owner can file a motion to amend. You can oppose it, and then they would reply to your opposition. And not only do they have to reply to your opposition, you are putting the patent owner in a position where they have to invent any and every possible theory of unpatentability that could exist on that record. It might have 10 references. It might have 100 references in the formal record. And they have to now, on their own, try to imagine what are all the different iterations and possibilities that the board might concoct in a final written decision that hasn't been presented, discussed, debated, or given any notice of throughout any part of the proceeding. And that seems just a peculiar way to go and seems to conflict with every principle that's in the APA. And I understand your concern about that, and I agree. Genzyme is—none of the cases of the party of the CIDR are directly on point. Genzyme is a little different, but it does talk about the notion that there, at least in the institution final decision context, there shouldn't be a requiring a word for a parity, which is kind of the issue here. How specific do you have to be? And a court is similar. I assume it's not kind of similar. And if this court concludes, under your scenario, yeah, there's a problem here on an administrative agency level, the appropriate course is to remand. Because this is sort of the situation that ACRA Products was contemplating was going to be a problem. The conflict between the board's obligation to the public in looking at these new proposed claims and what it has to do as an agency versus the allocations of the burdens of proof, in this case would be a good vehicle for the board to actually say, okay, here's the procedure where we see a gap between that which the petitioner is arguing and that which is where we see something in the record on that gap and here's how we're going to notify the patent owner on that and give them an opportunity to respond. This is the vehicle for doing that. We think notice should be sufficient in the context of this case, the remand order, the fact that the Spencer reference was well known. There was a debate about that. Both experts relied on that. This was a treatise. It's a long textbook because it's relied upon by both experts and the parties. Also, just to ask this pretty easy question, should we have a different rule based on the length of the reference? I'm sorry, I don't. Should we have a different rule based on the length of the reference? I honestly don't have a view on that, Your Honor. I think what that's getting to is Nike's point that, well, this was a long reference and Judge Chin's point, how would we know which specific pages that the board might end up relying upon? I think that's just something that is taken into account in the totality of the circumstances. You think it's something you would consider as the totality of circumstances, the length of the reference? I think that's a fair point that Nike makes. I also think it's a fair point that in the context of this proceeding, the rejection was still based upon Nishida and Schussler in light of a technical reference that showed the background state of the art exactly as this court had posited in its remand order. And to the point of what the board's obligation was and what Adidas' obligation was, as the board observed, neither party, neither us nor Nike, asked for briefing on this issue. Nike did not say, well, we wish to address the remand issue that this court had identified in its remand order. If there's no further questions on that issue, I just want to briefly comment on the issue with respect to the other claims and the long-felt need. And one point that Nike does not deal with in their briefing is that the board found that there was weak evidence of a long-felt need. And then it said that weak evidence does not overcome the strong prima facie case. And we think there's more than substantial evidence to support the weak. And there were no legal errors when the board made that finding. Particularly, the board said that Schussler actually met the need identified, that is, the need to eliminate cutting waste, which is something that this court actually observed in discussing the motivation to combine with Schussler in its remand order. So that board's finding is consistent with this court's remand order. The other point we make is eliminating cutting waste is just a species of the reducing waste that Nishida recognized, and again, this court recognized in its remand order. So the board's finding that there was weak long-felt need evidence was perfectly appropriate under both the remand order, this court's case law, and the evidence that Schussler met in eliminating waste from cutting waste altogether. Just curious, is there any litigation on this patent between the parties? No, there are other patents that are in this family that Nike had asserted against a different party, Puma, but not against Adidas. Thank you, counsel. Your time has expired. Thank you, Your Honor. Mr. Harris has some rebuttal time. Thank you, Your Honor. So I want to first follow up on Judge Chin's hypothetical about putting the patent owner in this impossible position of scouring the record and trying to anticipate everything that the board could potentially cite to for an argument that the petitioner never raised. In addition to putting the patent owner in that position, it's going to result in appeals like this one where the record is undeveloped when it gets to this court. The record regarding Spencer and what it discloses and what it would mean to a person of ordinary skill in the art, that was not litigated below. So if ACWA products is read to mean that the APA doesn't apply to motions to amend, then that's going to make this court a court of first instance for a lot of factual issues, which doesn't seem right to us. I want to quickly hit on my co-counsel's or opposing counsel's comments about the board's findings of weak evidence of secondary considerations. Before you get there, could you comment on the option of perhaps remanding Claim 49 as opposed to an outright reversal, assuming we find that there's some kind of procedural defect in what the board did? Yes, Your Honor. We think reversal is the appropriate outcome, obviously. So the board and ADIDAS have had two chances to justify their positions on Claim 49. They've failed both times. If they're given a third bite at the apple, what they're really being given is a new IPR. It's a brand-new argument that they didn't raise before. They could have raised before. They could have raised in opposition to our motion to amend. It was raised by the board. There's a procedural error because the board raised a new ground. And so why wouldn't we remand so that you could present your evidence and develop this factual issue that you're talking about before the board? Because ADIDAS could have raised that argument. But we've already determined that under aqua products, the board can raise, look at the entirety of the record and identify prior error. That's already been determined, right? I mean, at least discussed, admitted. So assuming they can do that, just assume with me for a minute that they can do that, then why wouldn't a remand be appropriate in response to a lack of notice? Right, because our position is they've already had an opportunity to do it, and they failed twice. I guess the idea is the burden of proof was on ADIDAS. And based on what ADIDAS did, you know, they didn't meet that burden. If the board had perhaps alerted everyone to this Spencer issue before the end of the trial, and then ADIDAS had seized upon it and relied upon it, then one could say, okay, in that context, ADIDAS had met its burden of proof, but not based on what happened here. Well, this court alerted ADIDAS to that potential argument, and, in fact, that's why the board picked up on it. And when we went back on remand, ADIDAS didn't ask to reopen the record to make that argument. They could have, and they didn't. So for that reason, we request that the court reverse and not remand. Thank you. Thank you, counsel. We will do our best not to miss a stitch in arriving at the proper conclusion. We'll take the case on revisement.